UNITED STATES of America,
Plaintiff–Appellee,

v.

Tommy DAVIS, Defendant–Appellant.

No. 96–2977.

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1997.

Decided Aug. 20, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 23, 1997.

Gail Joy Hoffman (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Hazel Washington (argued), Milwaukee, WI, for Defendant–Appellant.

Before EASTERBROOK, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

On April 23, 1996, Tommy Davis pleaded guilty to a narcotics conspiracy charge—after consultation with local counsel and an attorney in New York, after negotiations with the government and after several plea hearings. Now Mr. Davis, on direct appeal to this court, seeks to withdraw his guilty plea on two grounds. He contends that his attorney had a conflict of interest and that the district court failed to determine that Mr. Davis voluntarily and knowledgeably waived his right to go to trial. Mr. Davis never presented that request to the district court. For the reasons presented below, we affirm the judgment of conviction.

I

BACKGROUND

A. *The Guilty Plea*

Mr. Davis pleaded guilty to conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 2. During the plea process, attorney Martin Kohler represented Mr. Davis. The first plea agreement was filed in court on April 8, 1996. Before the change of plea hearing began the next day, however, Mr. Davis requested a delay so that he could "feel more comfortable in entering a plea" and so that his attorney could consult with an attorney from New York prior to the entry of the plea.[1] R.106 at 3. The court granted the request after Mr. Davis told the court that he and his wife had spoken with the New York lawyer, had paid him a fee to review documents, and had received advice from him that was similar to Kohler's advice.

---

1. Attorney Kohler explained to the court that the New York attorney had come to the attention of Mr. Davis' family because he had been successful in a New York federal district court on a suppression matter. R.106 at 3–4.

The parties filed a second plea agreement on April 18, 1996. At the change of plea hearing on that date, attorney Kohler and his partner, Michael Hart, appeared on behalf of Mr. Davis. Kohler informed the court that the plea agreement included a provision recommended by the New York attorney; furthermore, he stated, the New York lawyer had reviewed and approved the agreement. At that point the Rule 11 plea colloquy commenced. When the court asked Mr. Davis if his attorneys had answered his questions regarding the plea agreement, Mr. Davis stated he wanted to talk directly to the attorney in New York; he indicated that he felt he was being "railroaded."[2] The court informed Mr. Davis he could go to trial if he did not wish to proceed with the plea. When Kohler asked the court to clarify whether Mr. Davis wanted Kohler and his partner to remain as the attorneys of record, Mr. Davis responded affirmatively to the inquiry. The court then arranged a phone call between Mr. Davis and the New York lawyer and rescheduled the hearing.

At the April 23, 1996 hearing, Mr. Davis appeared with attorney Kohler. Mr. Davis informed the court that he had spoken with the New York lawyer and that he was ready to proceed with the plea agreement. The plea colloquy between Mr. Davis and the court commenced anew. Mr. Davis stated that he had read the indictment and plea agreement and had reviewed them with his

attorney. He also stated that his attorney had answered his questions about the plea agreement and had fully explained it to him. Mr. Davis indicated that he had conferred with another lawyer as well and that, based on the advice he had received and on his own understanding, he was prepared to proceed with the plea agreement. The plea colloquy was extensive; ultimately the court made the findings required under Rule 11 and accepted Mr. Davis' plea of guilty.[3]

On July 17, 1996, Michael Mandelman became Mr. Davis' attorney of record. At the sentencing hearing on August 2, Mr. Davis expressed to the court a general dissatisfaction with lawyer Kohler and his satisfaction with his New York counsel. He did not elaborate upon his dissatisfaction and did not mention any conflict of interest on the part of Kohler. Rather, he stated: "Through the blessings of God and another attorney in New York and Mr. Mandelman, you know, me and my family have finally figured things out." R.109 at 4. The court then asked Mr. Davis if he wanted to withdraw his plea of guilty and explained the repercussions of the plea withdrawal to the defendant. Attorney Mandelman apprised the court that he had discussed with Mr. Davis, on at least two or three occasions, the possibility of withdrawing his plea and going to trial. Although the lawyer stated that they were prepared to proceed with the sentencing, he requested a short recess to confer with Mr. Davis once

---

2. When the court asked Mr. Davis whether his attorneys had answered his questions, Mr. Davis responded, "I guess. As far as the State of Wisconsin treats Negroes, and I guess just as far as this system goes they did, yeah." R.107 at 16. He later expressed a similar concern: "I mean, I see how these people want to add one more Negro to the list." *Id.* at 18. The court responded to his concerns and then stated:

Well, I want Mr. Davis to understand that I'm not here—and I'm sure your attorneys are not here, because they've appeared in this court many times before, they're not interested in railroading you. And they're not interested in adding another black man or another Negro or whatever to their list of clients. What they're interested in and what I'm interested in is making sure that you understand the plea agreement and you want to proceed with the change of plea. If you don't, then that's why we're here, we're here to try the case if that becomes necessary.

*Id.* at 20–21.

3. The court made the following findings: (1) that Mr. Davis was competent to understand the nature of the proceedings; (2) that he had evidenced a thorough knowledge and understanding of the plea agreement; (3) that he had conferred both with his attorneys and with New York counsel regarding the negotiations leading up to the agreement; (4) that he understood the nature of the charge against him and the permissible penalty; (5) that he entered into the agreement freely and voluntarily; (6) that he understood that he had waived his right to a jury trial, the presumption of innocence, the right to confront his accusers and his right to give evidence on his own behalf; (7) that he had had the opportunity to discuss the case with his counsel and acknowledged that there was a factual basis for establishing each element of the offense; (8) that he had explored all available legal defenses; and (9) that he had waived his constitutional rights intelligently and voluntarily.

more on the matter. After a ten-minute discussion, both Mr. Davis and his attorney stated that Mr. Davis wished to proceed with sentencing without withdrawing his plea. The court then moved to the sentencing phase of the hearing. Mr. Davis was sentenced to a 120–month term of imprisonment followed by a 5–year period of supervised release.

### B. *Defense Counsel's Potential Conflicts of Interest*

The basis for Mr. Davis' allegation of ineffective assistance of counsel is that his lawyer, Martin Kohler, had a conflict of interest with respect to his representation of Mr. Davis. The circumstances surrounding this allegation arise from two pre-plea hearings. At the bail review hearing held February 22, 1996, Kohler advised the court that he had represented Mr. Davis' codefendant, Anthony Wayne Smith, years earlier in state court and that he had helped Smith surrender to drug enforcement agents in connection with this case before he realized that Smith and Mr. Davis were charged in the same indictment. Nevertheless, Kohler explained, he never represented Smith in these proceedings, and Mr. Davis and the government were aware of these facts. In Mr. Davis' presence, Kohler stated: "[T]here's no complaint with Mr. Davis with me representing him." R.104 at 3.

The second potential conflict of interest for attorney Kohler came to light at the final pretrial conference on March 5, 1996. The government prosecutor notified the court that Kohler previously had represented someone who now was a government informant in this case, someone who would be called to testify for the government at Mr. Davis' trial. The government believed that, if Mr. Davis' case were to proceed to trial, Kohler's conflict of interest could not be waived; however, if Mr. Davis were to plead guilty, then the conflict could be waived or

would be moot because the informant would not be "a factor." The government then stated that Mr. Davis had until April 1 to accept or to reject the plea agreement. At that point, Kohler responded that he no longer represented this informant and had not been in contact with him.[4] He stated that there were "ways to get around that conflict by hiring co-counsel," and that he would bring the issue to the court's attention if it was necessary. R.105 at 78. Both sides agreed that everything depended on whether Mr. Davis wished to proceed to trial. The court then concluded:

> Because of Mr. Kohler's extensive practice in the criminal justice field it's not uncommon for his name to be, as you put it, front and center, but I do feel that we probably should address this conflict at a later date when the court has been provided with the necessary facts to make a determination here.

Id. at 8. Mr. Davis' guilty plea was finalized the next month.

## II

## DISCUSSION

*Waiver*

Under Rule 52(b) of the Federal Rules of Criminal Procedure, courts of appeals have limited authority to correct errors that a party did not bring to the attention of the district court.[5] The Supreme Court has distinguished between "forfeited" errors that simply were not timely raised in district court and "waived" errors that were intentionally abandoned or relinquished. *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'") (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023,

---

4. Specifically, Kohler stated that he had petitioned this court to be allowed to withdraw from representing that cooperating informant, and the petition had been granted.

5. Rule 52. Harmless Error and Plain Error.

(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Fed.R.Crim.P. 52. (Boldface omitted).

82 L.Ed. 1461 (1938)). The consequent treatment of forfeited and waived rights on review is different: We review a forfeiture, a simple failure to assert a right, for plain error; however, "[w]hen a right is waived, it is not reviewable, even for plain error." *United States v. Penny,* 60 F.3d 1257, 1261 (7th Cir.1995) (reviewing forfeited double jeopardy defense for plain error), *cert. denied,* —— U.S. ——, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996); *see Johnson v. United States,* —— U.S. ——, —— ——, 117 S.Ct. 1544, 1548–49, 137 L.Ed.2d 718 (1997); *United States v. Griffin,* 84 F.3d 912, 924 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 495, 136 L.Ed.2d 387 (1996).

■ We have held that a defendant's failure to file a motion to withdraw a guilty plea, like a failure to object to errors in the plea process that violate Rule 11 of the Federal Rules of Criminal Procedure, is one we review for plain error. *See United States v. Akinsola,* 105 F.3d 331, 333 (7th Cir.1997); *United States v. Cross,* 57 F.3d 588, 590 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 406, 133 L.Ed.2d 324 (1995); *see also United States v. Quinones,* 97 F.3d 473, 475 (11th Cir.1996) (per curiam). However, this case is not a failure-to-file or failure-to-object case. Mr. Davis' intentional relinquishment or abandonment of a known right, his right to withdraw the plea, is properly characterized as a waiver of that right. *See Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023; *see also Freytag v. Commissioner,* 501 U.S. 868, 894 n. 2, 111 S.Ct. 2631, 2647, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring in part and concurring in judgment) (noting differences between waiver and forfeiture).

Not all rights can be waived. In *Olano* the Supreme Court raised further evaluative considerations about a waiver of rights:

Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.

507 U.S. at 733, 113 S.Ct. at 1777. In affirmatively deciding not to ask the district court to set aside his guilty plea and to proceed to trial, Mr. Davis decided not to go to trial and not to rely on any claim that he may have had with respect to conflict-free counsel. Certainly the right to trial is waivable. *See Olano,* 507 U.S. at 733, 113 S.Ct. at 1777. One "who knowingly and voluntarily pleads guilty in conformity with the requirements of Rule 11 cannot have his conviction vacated by a court of appeals on the ground that he ought to have had a trial." *Id.* We also have held that a defendant may waive the right to counsel free from conflict of interest. *See Gomez v. Ahitow,* 29 F.3d 1128, 1133 (7th Cir.1994), *cert. denied,* 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995).

Mr. Davis participated personally in the waiver; his own conduct demonstrates the voluntary affirmative relinquishment required to constitute a waiver.[6] The decision not to ask for leave to withdraw the plea was made with the advice of new counsel who was conflict-free. Indeed, the district court afforded Mr. Davis a further recess to consult again with this counsel before a final decision was made. His decision to abandon the opportunity to withdraw the plea constitutes a waiver of any objection to the guilty plea; the "error" is extinguished. *See Olano,* 507 U.S. at 733, 113 S.Ct. at 1777. Mr. Davis is precluded from raising the issue on appeal. *See Griffin,* 84 F.3d at 924 (concluding defendant's waiver extinguished his error); *United States v. Lakich,* 23 F.3d 1203, 1207 (7th

---

**6.** *See Griffin,* 84 F.3d at 924 (defendant's approval of jury instruction at trial waives objection to that instruction on appeal); *United States v. Ross,* 77 F.3d 1525, 1542 (7th Cir.1996) (after court gave requested instructions, defendant voluntarily waived any objection to them); *see also United States v. Perez,* 116 F.3d 840, 845–46 (9th Cir. 1997) (en banc) (if defendant knew of omitted element in jury instruction and yet relinquished his right to have it submitted to jury, that error is waived; but no evidence of such affirmative acts in this case; therefore forfeiture analysis was applied); *United States v. Mitchell,* 85 F.3d 800, 807–09 (1st Cir.1996) (defendant's affirmative agreement that tapes were properly edited and admissible as evidence constituted waiver of objection); *United States v. Gomez,* 67 F.3d 1515, 1520 (10th Cir.1995) (by clear terms of statute, defendant's failure to assert his right in a timely manner constituted a waiver of that right), *cert. denied,* —— U.S. ——, 116 S.Ct. 737, 133 L.Ed.2d 687 (1996).

Cir.1994) ("[I]f there has been a valid waiver, there is no 'error' for us to correct."). With the advice of counsel and ample opportunity to reflect on the matter, Mr. Davis declined the district court's invitation to withdraw his guilty plea; he is not entitled to a second bite of the apple by raising on appeal the very matter that he told the district court he did not want to raise.[7]

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

**7.** *Cf., e.g., United States v. Parrilla–Tirado*, 22 F.3d 368, 373–74 (1st Cir.1994) (no "second bite of the fig" allowed to defendant wanting belatedly to withdraw guilty plea); *United States v. Fial-* lo–Jacome, 874 F.2d 1479, 1481–82 (11th Cir. 1989) (no "two bites at the appellate apple" allowed for waiving issues that could have been raised in first appeal).